UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50163

_____

FRANCISCA CASTILLO; OLIVIA LOPEZ;
JOHN CASTILLO; MARY CARLEEN; FRANCIS
DELGADO; LUIZ CASTILLO; GILBERT CASTILLO;
RAYMOND CASTILLO; RUSSELL CASTILLO; JOE
CASTILLO; PETE CASTILLO; PAT SALAZAR;
VICKI SHAW,

                                        Plaintiffs- Counter Defendants-
                                        Appellees,

versus

CITY OF ROUND ROCK, TEXAS; MICHAEL H.
KINCAIDE, Officer, (4101); THOMAS C.
JACOBS, Corporal; SAMMY LEDESMA, Officer
(4112),

                                        Defendants- Counter Claimants-
                                        Appellants.

- - - - - - - - - -
Appeal from the United States District Court
for the Western District of Texas
(A-96-CV-863)
- - - - - - - - - -

March 15, 1999

Before HIGGINBOTHAM, JONES, and WIENER, Circuit Judges

Per Curiam:[*]

This civil rights case brought by the survivors of Jesus
Castillo (collectively, the Castillos) against the City of Round
Rock, Texas and three of its police officers (collectively, the
Defendants), alleging that three of the City's law enforcement

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

officers used excessive force in seizing Castillo and were deliberately indifferent to his ensuing medical needs, implicates 42 U.S.C. § 1983, the Texas Wrongful Death Act, the Texas Survivor Statute, the Texas Tort Claims Act, and Common Law tort law. In response to motions for summary judgment filed by the Defendants on grounds of qualified immunity, the district court denied dismissal, concluding that genuine issues of material fact precluded such a disposition of the case. Even when we view the summary judgment evidence in the light most favorable to the Castillos, we are convinced that the actions of the City's police officers were objectively reasonable under the circumstances and were taken in good faith, within the scope of their authority, thereby entitling the Defendants to summary judgments of dismissal as to all claims asserted against them.

I.

Facts Most Favorable to the Castillos

Late one cold January afternoon, the Round Rock Police Department began receiving 911 reports that a pedestrian was yelling and interfering with traffic at the intersection of Highway 620 and Interstate Highway 35. Dispatchers relayed the information to Officers Kincaide and Ledesma, who responded in their separate patrol cars. As they were proceeding to the scene, the officers were further advised by a police dispatcher that a man fitting the same description was reported to be stealing popcorn and beer from a Texaco station at that location. The subject of the reports turned out to be Castillo, a relatively short and heavy, 39-year-

old Hispanic male with a history of mental illness.[1]

Officer Kincaide was the first to arrive, spotting Castillo in the drive-through lanes of an adjacent bank, lightly clad despite the near-freezing temperature. Officer Kincaide ordered Castillo to stop where he was, and Castillo complied, placing a pack of beer on the ground, taking a drink from the bottle of beer he held in his hand, and then raising both hands while he continued to hold the beer bottle in one hand. Kincaide approached Castillo and "attacked him," knocking the beer bottle out of his hand. Officer Kincaide and Castillo fought, struggling vigorously on the ground, as Kincaide attempted to subdue Castillo and citizen bystanders tried to aid in that effort. Castillo bloodied Officer Kincaide's nose in the fracas, and it bled profusely.

Officer Ledesma arrived and assisted Officer Kincaide, together with citizen bystanders, in restraining Castillo in the prone position on the ground, eventually handcuffing his hands behind his back. Corporal Jacobs arrived after Castillo was handcuffed but while he was still kicking and yelling. Officer Kincaide and a male bystander climbed atop Castillo as the three officers put flex cuffs on Castillo's legs. All told, Officer Kincaide and the Good Samaritan remained on Castillo's back for four to six minutes. During the struggle, Officer Kincaide shoved his knee in the back of Castillo's neck and kept it in there for some five to ten minutes. At one point, Castillo exclaimed in

---

[1] The Castillos allege that Castillo and Officer Kincaide had been schoolmates but the record does not reflect that the officer recognized Castillo or was aware of his mental condition.

3

Spanish that he was going to die. Noticing that Officer Kincaide was bleeding, Corporal Jacobs radioed the dispatcher to send an ambulance to the scene.

When, after being handcuffed and leg-shackled, Castillo finally stopped struggling, the officers rolled him over onto his back. When they did, the officers noticed that Castillo's face had turned blue and that he appeared to be unconscious. The ambulance arrived shortly and took Castillo to a nearby hospital where he died approximately a week later without having regained consciousness. Castillo's tragic death was caused by anoxic encephalopathy that produced cardiorespiratory arrest during the positional asphyxia that resulted from his being laid on the ground, handcuffed and in the prone position, for four to six minutes with the weight of two adults on his back.[2]

The Castillos filed state wrongful death and survival claims, and a federal civil rights claim under 42 U.S.C. § 1983, against the Defendants. The Castillos alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. They also asserted a negligence claim against the City of Round Rock and both statutory and common law tort claims against Kincaide, Ledesma, and Jacobs, in their individual and official capacities.

The parties agreed to proceed before a magistrate judge. The Defendants filed motions for summary judgment, which the magistrate

---

[2] Castillo suffered from health problems that included obesity and an enlarged heart, which might have contributed to his death.

judge granted as to the Fifth and Eighth Amendment claims but denied as to the Fourth and Fourteenth Amendment claims and as to the state law claims as well. The Defendants timely filed notices of appeal from the court's interlocutory refusal to dismiss all claims on grounds of qualified or official immunity.

## II.

## Analysis

We conclude that we have jurisdiction to review this case. We recently clarified our approach to the arcane issues whether and under what circumstances we can review a district court's interlocutory denial of qualified immunity. In <u>Colston v. Barnhart</u>,[3] we stated that:

> when a district court denies a motion for summary judgment on the ground that "genuine issues of material fact remain," the court has made two distinct legal conclusions. First, the court has concluded that the issues of fact in question are genuine, i.e., the evidence is sufficient to permit a reasonable fact finder to return a verdict for the nonmoving party. Second, the court has concluded that the issues of fact are material, i.e., resolution of the issues might affect the outcome of the suit under governing law.[4]

Thus, an appellate court may not review a district court's determination that disputed issues of fact are genuine, but may review the question of materiality.[5] The Defendants maintain that when we accept as true that Castillo raised his hands to surrender

---

[3] 146 F.3d 282 (5th Cir.)(order denying rehearing en banc), <u>cert</u>. <u>denied</u>, 119 S. Ct. 618 (1998).

[4] <u>Id</u>. at 284 (citation omitted).

[5] <u>See</u> <u>Id</u>.

5

peacefully and accept the Castillos' version of how the police officers' actions led to Castillo's death, we have jurisdiction to consider whether the lower court erred in not granting summary judgment. In essence, the Defendants argue that the disputed facts do not affect whether qualified immunity applies; rather that, even assuming the truth of the Castillos' version of the facts, the Defendants have not violated Castillo's constitutional rights. As such, any genuine dispute about the facts is not material. We agree that, under such an approach, we have appellate jurisdiction.

Claims of excessive or deadly force arise under the Fourth Amendment.[6] The "reasonableness" standard requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[7] The reasonableness determination involves a fact-intensive analysis of the case, including consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest" to determine whether the force used was excessive.[8]

When, in our de novo review, we consider the otherwise

---

[6] See Graham v. Connor, 490 U.S. 386, 395 (1989)("[A]ll claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other single ‹seizure' of a free citizen should be analyzed under the Fourth Amendment and its ‹reasonableness' standard....").

[7] Graham, 490 U.S. at 396 (citations and internal quotations omitted).

[8] Id.

disputed facts in the light most favorable to the Castillos, we are convinced beyond peradventure that the officers did not use excessive force or deliberately disregard Castillo's medical needs. Neither side disputes that Castillo raised the beer bottle in the air in response to the officer's commands. Regardless of Castillo's subjective intent in doing so, it is not unreasonable to assume that, given the totality of the circumstances, Officer Kincaide could have perceived Castillo's action as threatening. More particularly, as the threat thus perceived includes the perception of the beer bottle as a dangerous weapon, a pre-emptive strike by the officer to disarm the perceived adversary imparts no culpability to the officer, even if his action is found (or assumed) to be the immediate producing cause of the ensuing altercation.

In any event, in the struggle that followed, Castillo refused to submit, actively resisting by kicking and yelling —— and bloodying the officer's nose —— in a manner that a reasonable officer could perceive as hostile. That Castillo's struggle might eventually have become a panic reaction to his positional asphyxia changes neither its perception to reasonable officers as hostility and resistance to arrest nor the fact that it clearly began as hostile resistance to lawful and reasonable demands of the police. We are satisfied that the officers were not unreasonable in placing Castillo in a prone position and incapacitating him as quickly and professionally as possible, by climbing on top of his back and securing his hands and legs, so as to protect themselves and bystanders from a large and powerful man who was clearly out of

7

control and refusing to submit to the officers' commands.

In the recent and eerily similar Seventh Circuit case of Estate of Phillips v. City of Milwaukee,[9] an obese, mentally ill man who was hostile to police died from positional asphyxia after being held in the prone position while being handcuffed. The court determined that the officers' actions constituted a reasonable response to the situation that they faced —— a hostile suspect who refused to be restrained.[10] The Phillips court found no constitutional violation and did not reach the issue of qualified immunity.[11]

"Authorities must be allowed 'to graduate their response to the demands of any particular situation.'"[12] "Restraining a person in a prone position is not, in and of itself, excessive force when the person restrained is resisting arrest."[13]

Our review of the applicable law and the operable facts —— resolving all disputes in favor of the Castillos —— convinces us that the situation faced by the officers in their encounter with Castillo justified the degree of force exerted under the circumstances and was not unreasonable, either quantitatively or qualitatively. Neither can it be said that the officers had

_____

[9] 123 F.3d 586 (7th Cir. 1997), cert. denied, 118 S. Ct. 1052 (1998).

[10] See Id. at 593.

[11] See Id. at 597.

[12] United States v. Montoya de Hernandez, 473 U.S. 531, 542 (1985)(quoting United States v. Place, 462 U.S. 696, 709 n.10 (1983)).

[13] Estate of Phillips, 123 F.3d at 593.

disregard, deliberate or otherwise, for Castillo's health needs. As soon as his distress was recognized he was placed in the ambulance and rushed to the hospital. The procedures used were well within police norms; both the time and the extent of the force were reasonable if not minimal; and the abandonment of force and commencement of concern for the health of the person restrained were timely and appropriate. Under the circumstances, there was no constitutional violation and thus no legal support for the claims advanced by the plaintiffs. Consequently, the rulings of the district court denying dismissal must be reversed and judgment rendered in favor of the Defendants, dismissing all claims against them.[14]

REVERSED and RENDERED.

---

[14] The Texas law of "official immunity" is essentially identical to the federal law of qualified immunity, sparing government officials from litigation on matters arising from or connected with the discharge of discretionary duties, as long as the officials act in good faith and within the scope of their authority, City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994). As the defendant officers were clearly discharging discretionary duties within the scope of their authority, and as the same facts that demonstrate objective reasonableness for federal purposes demonstrate good faith for state purposes, see City of Lancaster, 883 S.W.2d at 656-57 (holding that a reasonably prudent officer acting under the same or similar circumstances could have believed that the force used was necessary, is acting in good faith), the defendant officers here are entitled to official immunity.